**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ETHIOPIAN INSURANCE CORPORATION; ETHIOPIAN REINSURANCE, S.C.; CHUBB EUROPEAN GROUP SE, | |
| Petitioners, | Case No.: 1:26-cv-1909 |
| -against- | |
| THE BOEING COMPANY, | |
| Respondent. | |

**PETITION FOR AN
ORDER APPOINTING AN ARBITRATOR**

1.      Petitioners Ethiopian Insurance Corporation, Ethiopian Reinsurance, S.C. and Chubb European Group, SE, by their undersigned attorneys, petition this Court pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), and Section 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201–08, for an Order appointing an arbitrator to preside over an arbitration commenced by The Boeing Company ("Boeing").  Petitioners request that this application be heard in the manner for the making and hearing of motions to this Court under Local Rule LCvR 7 and respectfully ask this Court to consider the accompanying Memorandum of Law and Declaration of Bryce L. Friedman (dated June 1, 2026) ("Friedman Decl.").  In support of this Petition, Petitioners state:

**NATURE OF DISPUTE**

2.      On March 10, 2019, a Boeing 737 MAX 8 operated by Ethiopian Airlines as Flight 302 crashed shortly after takeoff from Addis Ababa Bole International Airport in Ethiopia ("ET 302 Crash").

3.      The ET 302 Crash spurred both civil and criminal litigation against Boeing. Criminally, the U.S. Department of Justice charged Boeing with defrauding the Federal Aviation Administration by intentionally withholding and concealing information about the plane's operational systems. *United States v. The Boeing Company*, 4:21-CR-005, N.D. Tex., Dkt. 4, at 1, ¶ 1 (Jan. 7, 2021); *id.* at A-11, ¶ 35.  To avoid prosecution, Boeing admitted that it defrauded the Federal Aviation Administration and agreed to pay billions in criminal fines and restitution to victims.  *Id.* at 2, 9, 12, ¶¶ 2, 7, 12, 13; *id.* at A-13 ¶ 42.

4.      More than 140 civil claims were filed against Boeing and consolidated in the United States District Court for the Northern District of Illinois.  *See In re Ethiopian Airlines Flight ET 302 Crash*, 1:19-cv-2170 (N.D. Ill.).  Boeing admitted liability and stipulated that it "produced an airplane that had an unsafe condition that was a proximate cause of Plaintiff's compensatory damages caused by the Ethiopian Airlines Flight 302 accident."  *Id.* at Dkt. 1217-1, Joint Mot. to Approve Stip., at 5 (Nov. 10, 2021); *id.* at Dkt. 1220, Agreed Order on Joint Mot. to Approve Stip. (Nov. 15, 2021).  Boeing further stipulated that it "does not blame any other person for the Ethiopian Airlines Flight 302 accident, nor will Boeing argue that anyone else is responsible for Plaintiff's damages."  *Id.* at Dkt. 1217-1 at 5.

5.      On February 26, 2026, Boeing initiated an arbitration against Petitioners seeking insurance coverage for liability arising from the ET 302 Crash under an airline liability insurance policy issued to Ethiopian Airlines Group by Ethiopian Insurance Corporation and Ethiopian

Reinsurance, S.C. (the "Insurers"), for the period 21 December 2018 to 21 December 2019 (the "Airline Policy"), Friedman Decl. Ex. A, and reinsured[1] by Chubb European Group SE and dozens of other reinsurers operating in the Lloyd's of London market (the "Reinsurers"), Friedman Decl. ¶¶ 2, 4.[2] Boeing seeks insurance coverage from Ethiopian Insurance Corporation and Ethiopian Reinsurance, S.C. and Chubb European Group SE, as reinsurer of Ethiopian Insurance Corporation and Ethiopian Reinsurance, S.C. Friedman Decl. ¶ 4. Petitioners contend, among other things, that the Airline Policy does not cover Boeing's liability for the ET 302 Crash and, even if coverage were otherwise available, it would be barred by several policy provisions including, among others, the Airline Policy's breach of air navigation regulations exclusion, Friedman Decl. Ex. A § 6.1.1 at Petitioners_00000023, and its criminal and illegal activities exclusion, Friedman Decl. Ex. A § 3.2.2.12 at Petitioners_00000013.

6. Boeing asserts claims against Insurers and Reinsurers totaling in excess of $1 billion arising out of the ET 302 Crash, implicating complex insurance and reinsurance coverage issues.

7. The Airline Policy contains an arbitration clause that requires disputes like this one to be resolved by a three-person arbitration panel: one arbitrator appointed by each party and a third arbitrator—the umpire—to be chosen by the party-appointed arbitrators. Friedman Decl. Ex. A § 6.5 at Petitioners_00000027. This Petition arises from the party-appointed arbitrators' inability to agree on an umpire.

---

[1] "[R]einsurance is the insurance of one insurer (the 'reinsured') by another insurer (the 'reinsurer') by means of which the reinsured is indemnified for loss under insurance policies issued by the reinsured to the public." *Travelers Cas. & Sur. Co. v. Certain Underwriters at Lloyd's of London*, 96 N.Y.2d 583, 587 (2001) (internal quotation marks and citations omitted).

[2] The other reinsurers are parties to the underlying arbitration but have elected not to participate in this proceeding for the sake of efficiency, as Petitioners can adequately represent their interests.

8. The parties' agreements do not provide a mechanism for resolving a deadlock between the party-appointed arbitrators. Boeing has rejected Petitioners' proposal of a "strike-and-rank process," by which the parties nominate umpire candidates, both sides reject unacceptable candidates and rank the remaining ones, ensuring a fair, mutually agreeable decision-maker for the dispute. Friedman Decl. ¶ 17, Ex. M.

9. Therefore, pursuant to Section 206 of the Convention and Section 5 of the FAA, Petitioners ask this Court to appoint as umpire one of the following candidates: Lawrence Pollack, W. Mark Wigmore, or Diane Nergaard. Each of their qualifications is set forth in more detail at Friedman Decl. ¶¶ 7, 13, Exs. E–F, H–L. Significantly, each proposed candidate is a well-qualified neutral with decades of experience in high-value insurance, reinsurance, and other disputes. Each is certified by the AIDA Reinsurance and Insurance Arbitration Society ("ARIAS") as an insurance and reinsurance dispute professional. ARIAS is a nonprofit corporation that provides training and continuing education in the skills necessary to serve effectively on an insurance/reinsurance arbitration panel. It certifies a pool of qualified arbitrators to resolve matters in a professional, knowledgeable, and cost-effective manner. ARIAS, *Home*, https://www.arias-us.org/ (last accessed May 30, 2026). "Obtaining certification as an ARIAS•U.S. Certified Arbitrator is an accomplishment attained only by those who have demonstrated knowledge and experience in the industry and have completed a rigorous set of standards including training through ARIAS•U.S. educational programs to obtain the necessary skills to serve effectively on an insurance/reinsurance arbitration panel. Once certified, arbitrators are required to participate in ongoing professional development by completing recertification requirements every two years." ARIAS, *Certification*, https://www.arias-us.org/certification/ (last accessed May 30, 2026).

10.    The parties did not contract for their dispute to be resolved by a court or by a current or former judicial officer.  Petitioners believe an umpire with substantial insurance and/or reinsurance experience, and certification by ARIAS as an arbitrator, is better suited to serve as an umpire in this particular insurance and reinsurance matter.  Nonetheless, if this Court is inclined to appoint a former judicial officer as Boeing seems to prefer, Petitioners respectfully request that it be retired United States District Court Judge Barbara S. Jones.  Friedman Decl. ¶ 20, Ex. N.

## THE PARTIES

11.    Ethiopian Insurance Corporation is an Ethiopian corporation with its principal place of business in Ethiopia.  Pursuant to the parties' Agreement to Arbitrate, Friedman Decl. Ex. B at 2, Ethiopian Insurance Corporation submits to the jurisdiction of this Court only for the limited purpose of resolving the issues raised in this Petition.

12.    Ethiopian Reinsurance, S.C. is an Ethiopian share company with its principal place of business in Ethiopia.  Pursuant to the parties' Agreement to Arbitrate, Friedman Decl. Ex. B at 2, Ethiopian Reinsurance, S.C. submits to the jurisdiction of this Court only for the limited purpose of resolving the issues raised in this Petition.

13.    Chubb European Group SE is a Societas Europea, a public company registered in accordance with the corporate law of the European Union, with its registered office located in France.  Pursuant to the parties' Agreement to Arbitrate, Friedman Decl. Ex. B at 2, Chubb European Group SE submits to the jurisdiction of this Court only for the limited purpose of resolving the issues raised in this Petition.

14.    Boeing is a Delaware corporation with its principal place of business in Virginia.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203, which provide that a District Court has federal question jurisdiction over proceedings brought under the Convention.

16.     This proceeding involves an arbitration agreement arising out of a commercial relationship that falls under the Convention, pursuant to 9 U.S.C. § 202, because the arbitration is not entirely between citizens of the United States.

17.     This Court has personal jurisdiction over Boeing because Boeing agreed, in the parties' Agreement to Arbitrate to submit itself to the jurisdiction of the United States District Court for the District of Columbia for the purposes of any arbitration brought pursuant to the Agreement.  Friedman Decl. Ex. B at 2.

18.     Venue is proper in this Court pursuant to 9 U.S.C. § 204 because the parties designated Washington, D.C. as the seat of the arbitration.  Friedman Decl. Ex. B at 2.

## FACTUAL BACKGROUND

### A.  The Arbitration Agreements

19.     The Airline Policy requires that disputes concerning the interpretation of the Airline Policy or the rights with respect to any transaction involved be resolved through arbitration before a three-member panel.  Friedman Decl. Ex. A § 6.5 at Petitioners_00000027.

20.     Each side must appoint one arbitrator, and those party-appointed arbitrators must jointly select the umpire.  Friedman Decl. Ex. A § 6.5 at Petitioners_00000027.

21.     The Airline Policy does not provide a mechanism for resolving a deadlock if the party-appointed arbitrators cannot agree on the umpire.  The relevant clause provides:

> In the event of a dispute arising between the Insured and the Insurers
> with reference to the interpretation of this Policy or the rights with

respect to any transaction involved, the dispute shall be referred to two Arbitrators, one to be chosen by each party, and an Umpire chosen by the said Arbitrators before entering upon the reference.

Friedman Decl. Ex. A § 6.5 at Petitioners_00000027.

22. On August 11, 2025, Boeing, Insurers, and Reinsurers entered an Agreement to Arbitrate regarding Boeing's claims for coverage for the ET 302 Crash as an alleged additional insured under the Airline Policy. Friedman Decl. Ex. B at 2.

23. The Agreement to Arbitrate provides that the arbitration will be confidential, seated in Washington, D.C., and governed by the Airline Policy's Section 6.5 arbitration clause. Friedman Decl. Ex. B at 2.

24. The Agreement to Arbitrate further provides that the arbitration panel shall determine the governing law[3] and procedural rules and that the parties will attempt in good faith to select an arbitration service provider. Friedman Decl. Ex. B at 2. If the parties cannot agree, "the arbitration panel will select the arbitration service provider." Friedman Decl. Ex. B at 2.

25. The Agreement to Arbitrate does not provide a mechanism for resolving a deadlock if the party-appointed arbitrators cannot agree on the umpire.

26. The parties agreed to submit to the jurisdiction of the U.S. District Court for the District of Columbia for the limited purpose of arbitration brought pursuant to the Agreement to Arbitrate. Friedman Decl. Ex. B at 2.

---

[3] By this Petition, Petitioners do not concede that any particular law will apply to the substantive dispute between the parties. The applicable contract has a governing law provision and the Agreement to Arbitrate provides that the panel shall determine the governing law. Friedman Decl. Ex. A at § 6.6 at Petitioners_00000027; *id.*, Ex. B; *Certain Underwriters at Lloyd's v. Edouch Elsa Indep. Sch. Dist.*, 729 F. Supp. 3d 378, 394 (S.D.N.Y. 2024) (appointing an umpire pursuant to the FAA while noting that the choice-of-law determination "ultimately will be for the panel, not this Court, to decide"); *Certain Underwriters at Lloyd's v. Dryades YMCA*, 2024 U.S. Dist. LEXIS 222392, at *10 (S.D.N.Y. Nov. 21, 2024) (appointing an umpire pursuant to the FAA while noting that it "will be up to the Arbitration Tribunal to decide the choice-of-law question").

**B.  The Arbitration**

27.  On February 26, 2026, Boeing commenced the arbitration against Insurers and Reinsurers, asserting that it is insured under the Airline Policy with respect to certain claims arising from the ET 302 Crash.  Friedman Decl. ¶ 2.

28.  Boeing seeks insurance coverage for liabilities arising out of the ET 302 Crash. Friedman Decl. ¶ 3.  The arbitration raises complex insurance and reinsurance coverage issues as a result, in part, of the high-value and international nature of the dispute.  Friedman Decl. ¶¶ 2–4.

**C.  The Impasse on Umpire Selection**

29.  On March 26, 2026, Boeing appointed David Goodwin as its party-appointed arbitrator.  Friedman Decl. ¶ 5.  Mr. Goodwin has represented policyholders in litigation against insurers for decades.  Friedman Decl. ¶ 5, Ex. D (Goodwin Covington profile).  He is a long-time California-based partner (now Of Counsel) at Covington & Burling LLP.  Friedman Decl. ¶ 5, Ex. D (Goodwin Covington profile).  Insurers and Reinsurers appointed Jonathan Rosen as their party-appointed arbitrator.  Friedman Decl. ¶ 5.  Mr. Rosen is a former insurance executive and experienced insurance and reinsurance arbitrator.  Friedman Decl. ¶ 5, Ex. C (Rosen ARIAS profile).

30.  The parties agreed that Messrs. Rosen and Goodwin would attempt to agree upon an umpire by April 27, 2026.  Friedman Decl. ¶ 6.

31.  Mr. Rosen proposed to Mr. Goodwin that Lawrence Pollack be appointed as umpire.  Friedman Decl. ¶ 7.  Mr. Pollack has been affiliated with JAMS, an international dispute resolution provider, since 2010.  Friedman Decl. ¶ 7, Ex. E (Pollack JAMS Profile).  Mr. Pollack is also an ARIAS-certified arbitrator.  Mr. Pollack has extensive experience working with both policyholders and insurers alike, and both have referred to him as "personable and thoroughly

commercial, perfect for insurance litigation." Friedman Decl. ¶ 8, Ex. E. Mr. Pollack has dealt with aviation controversies, policy language disputes, and cases in the United States involving foreign parties. Friedman Decl. ¶ 8, Ex. E.

32. Mr. Goodwin did not propose an alternative candidate. Friedman Decl. ¶ 9. However, the parties agreed to extend the April 27, 2026 deadline to May 11, 2026 to give the party-appointed arbitrators additional time to deliberate. Friedman Decl. ¶ 10.

33. In parallel, on April 3, 2026, Insurers and Reinsurers proposed a detailed, neutral umpire selection procedure to address the possibility that the party-appointed arbitrators might be unable to reach an agreement. Friedman Decl. ¶ 17, Ex. M.

34. Under that proposal, the parties would exchange proposed candidates, obtain disclosures and questionnaires concerning the qualifications and potential conflicts, narrow the candidate pools, and rank the remaining candidates through a strike-and-rank process. Friedman Decl. ¶ 17, Ex. M. The candidate with the lowest aggregate ranking would be selected as umpire, with any tie to be resolved by a neutral, random mechanism tied to the closing digit of the Dow Jones Industrial Average. Friedman Decl. ¶ 17, Ex. M.

35. Boeing did not agree to Insurers and Reinsurers' proposed procedure. Boeing eventually proposed that the parties retain the International Centre for Dispute Resolution ("ICDR") to select the umpire in the event the party-appointed umpires could not agree. Friedman Decl. ¶ 18. Insurers and Reinsurers consider it critical that the parties have a role in umpire selection (rather than the black box the ICDR offers), and that the umpire candidates have substantial insurance and reinsurance arbitration experience, preferably including ARIAS certification. Insurers and Reinsurers sought to preserve the ability to select such a candidate

through the strike-and-rank process proposed to Boeing. Accordingly, they did not agree to Boeing's proposal. Friedman Decl. ¶ 18.

36.     On May 6, 2026, Mr. Goodwin proposed to Mr. Rosen that each party-appointed arbitrator name three to five candidates so the party-appointed arbitrators could collectively discuss the set of proposed candidates and select one. Friedman Decl. ¶ 11. Mr. Rosen agreed to that process, advising Mr. Goodwin that "given the inherent underwriting considerations in this dispute," from experience, he was reluctant to use a retired judge as an umpire. Friedman Decl. ¶ 11.

37.     On May 20, 2026, Messrs. Rosen and Goodwin each provided a list of three proposed candidates. Friedman Decl. ¶ 13. Mr. Goodwin appears to have not considered or rejected Mr. Rosen's suggestions for arbitrator qualifications and proposed three individuals Mr. Rosen indicated would not be appropriate umpires.

38.     On May 22, 2026, the parties agreed to extend the deadline to June 1, 2026 to allow the party-appointed arbitrators additional time to discuss the six candidates. Friedman Decl. ¶ 14. The party-appointed arbitrators were unable to agree on an umpire by June 1, 2026. Friedman Decl. ¶ 15. The parties have not agreed on an alternative selection procedure. Friedman Decl. ¶¶ 17-18.

39.     Neither the Airline Policy nor the Agreement to Arbitrate provides a mechanism for resolving that deadlock, and the parties likewise have been unable to agree upon an alternative selection procedure. Friedman Decl. ¶¶ 17-18, Exs. A, B at 2.

40.     As a result, Petitioners request this Court's assistance in appointing an umpire.

41.     Petitioners submit that the nature and complexity of this dispute requires an umpire candidate with demonstrated insurance-industry dispute resolution experience and, preferably,

accreditation by an independent third-party such as ARIAS. Messrs. Pollack, Wigmore and Ms. Nergaard have such experience. Friedman Decl. ¶¶ 7, 13, Exs. E–F, H–L.

42. The candidates proposed by Boeing's party-appointed arbitrator do not. Two are law professors and retired judges and none appears to hold ARIAS certification or have any particular experience with the kinds of issues in dispute. The third is a former California lawyer who does not appear to have worked in the insurance or reinsurance industry, nor does he appear to be actively engaged in resolving complex disputes or presiding over potentially lengthy arbitrations. Boeing's party-appointed arbitrator's proposed candidates do not possess the same combination of ARIAS certification and extensive insurance and reinsurance arbitration and dispute resolution experience as Petitioners' proposed candidates.

## CLAIM FOR RELIEF

43. Petitioners repeat and reallege the allegations contained in paragraphs 1–42 as if fully set forth herein.

44. Section 206 of the Convention provides that a court may "appoint arbitrators in accordance with the provisions of the [parties'] agreement." 9 U.S.C. § 206.

45. Section 5 of the FAA provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire" but "any party thereto shall fail to avail himself of such a method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require[.]" 9 U.S.C. § 5.

46.     The parties' agreements provide that disputes subject to arbitration "shall be referred to two Arbitrators, one to be chosen by each party, and an Umpire chosen by the said Arbitrators."  Friedman Decl. Ex. A § 6.5 at Petitioners_00000027.

47.     The party-appointed arbitrators are unable to agree on an umpire.

48.     The Airline Policy and Agreement to Arbitrate are silent with respect to how the parties are to proceed if the party-appointed arbitrators are unable to agree on an umpire.

49.     The parties have reached an impasse with respect to how to proceed.

50.     As shown in the accompanying Friedman Decl. and Memorandum of Law, each of the umpire candidates proposed by Petitioners is highly qualified to serve as umpire in the arbitration.

51.     Accordingly, Petitioners respectfully request that, pursuant to 9 U.S.C. §§ 5 and 206, this Court appoint either Lawrence Pollack, W. Mark Wigmore, or Diane Nergaard as umpire.

52.     Petitioners believe that this arbitration is best suited to be decided by an umpire with ARIAS certification as well as substantial insurance and reinsurance arbitration experience rather than by a former judicial officer with no specific industry experience.  However, if this Court is inclined to appoint a former judicial officer, Petitioners respectfully request that it be retired U.S. District Judge Barbara S. Jones.  Friedman Decl. ¶ 20, Ex. N (Jones's professional profile).


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Petitioners respectfully request that this Court enter an Order:

a.    Appointing Lawrence Pollack, W. Mark Wigmore, or Diane Nergaard as umpire in the arbitration between the parties;

b.    Awarding Petitioners such other and further relief as this Court deems just and proper.

Dated: June 1, 2026

|  |  |
|---|---|
| | Respectfully submitted, |
| SIMPSON THACHER & BARTLETT LLP | KAUFF LATON MILLER LLP |
| By: /s/ *Abram J. Ellis* | By: /s/ *Scott D. Laton* |
| Abram J. Ellis (Bar ID: 497634) | Scott D. Laton |
| 900 G St. NW | (*pro hac vice* application pending) |
| Washington, D.C. 20001 | Pieter Van Tol |
| Telephone: (202) 636-5500 | (*pro hac vice* application pending) |
| Email: aellis@stblaw.com | 810 Seventh Avenue, 33rd Floor |
| | New York, NY 10019 |
| Bryce L. Friedman | Telephone: (212) 906-3443 |
| (*pro hac vice* application pending) | Email: slaton@klmllp.com |
| Summer Craig | pvantol@klmllp.com |
| (*pro hac vice* application pending) | |
| 425 Lexington Avenue | *Counsel for Ethiopian Insurance* |
| New York, NY 10017-3954 | *Corporation and Ethiopian* |
| Telephone: (212) 455-2000 | *Reinsurance, S.C.* |
| Email: bfriedman@stblaw.com | |
| scraig@stblaw.com | |
| | |
| *Counsel for Chubb European Group SE* | |